IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER BUONICONTI,       :    CIVIL ACTION
                             :    No. 15-3787
        Plaintiff,     :
                             :
   v.                   :
                             :
CITY OF PHILADELPHIA et al.,   :
                             :
        Defendants.    :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.             December 7, 2015

**Table of Contents**

I.   INTRODUCTION........................................... 2

II.  FACTUAL BACKGROUND..................................... 4

III. PROCEDURAL HISTORY..................................... 6

IV.  LEGAL STANDARD......................................... 8

V.   DISCUSSION ........................................... 10

     A.   Count 1: Eighth Amendment Denial of Medical Care
         Against All Individual Defendants................. 11

         1.   The Elements of Plaintiff's Eighth
             Amendment Claim............................. 12

         2.   The Plausibility of the Claim............... 14

     B.   Counts 4 and 7: Eighth Amendment Denial of
         Medical Care and Monell Claim Against Defendant
         City of Philadelphia............................. 16

         1.   The Elements of Plaintiff's Monell Claim..... 17

         2.   Municipal Policymakers....................... 17

         3.   Municipal Policy or Custom................... 19

1

        a.   Alleged Failure to Provide Sufficient Medical Care............................ 21

        b.   Alleged Failure to Train or Supervise Officials Regarding Emergency Medical Treatment............................... 26

        c.   Alleged Failure to Investigate the Assault................................ 29

        d.   Alleged Failure to Train or Supervise Officials as to Protection for Inmates............................ 30

   C.   Count 8: Supervisory Liability Against Defendants Giorla and Goodman..................... 33

        1.   The Elements of Plaintiff's Claim........... 34

        2.   The Plausibility of the Claim................ 36

   D.   Count 9: Eighth Amendment Against Defendant Osborne................................ 37

        1.   The Elements of Plaintiff's Claim........... 38

        2.   The Plausibility of the Claim................ 38

        3.   Qualified Immunity........................... 41

   E.   Leave to Amend................................... 43

VI.   CONCLUSION........................................... 43

## I.   INTRODUCTION

Plaintiff Christopher Buoniconti brings this action pursuant to 42 U.S.C. § 1983 and Pennsylvania state law, seeking damages against the City of Philadelphia; Louis Giorla, as Commissioner of the Philadelphia Prison System; Juanita Goodman, as the Warden of the Philadelphia Prison System for the Alternative and Special Detention Division; Captain Cynthia

Osborne, as a Captain and senior officer within the Philadelphia
Prison System; and John Does 1-2, employed by the Philadelphia
Prison System as corrections officers, medical providers and/or
social workers (collectively, the "City Defendants"). Am. Compl.
¶¶ 6-10, ECF No. 3. Plaintiff also brings suit against Corizon
Health, Inc., t/a Prison Health Services, Inc., a corporation
contracted by the City of Philadelphia to provide inmates with
medical services, and John Does 3-4, employed by Defendant
Corizon Health, Inc., as nurses, doctors and/or medical
providers (collectively, the "Health Provider Defendants"). Id.
¶¶ 11-12.

Although Plaintiff pursues a potpourri of theories,
both as to each Defendant and as to Defendant City of
Philadelphia under Monell v. Department of Social Services, 436
U.S. 658 (1978), the crux of the matter here appears to be
Plaintiff's claim that the City Defendants failed to protect
Plaintiff from violence by other inmates and that once violence
occurred, they failed to provide him with adequate medical care
in violation of his constitutional rights.

The City Defendants moved to dismiss Plaintiff's
Amended Complaint for failure to state a claim as to Counts 1,
4, 7, 8, and 9.[1] ECF No. 2. Because, as more fully set forth

---

[1]     The Health Provider Defendants have not joined in the
Motion to Dismiss.

below, the allegations in the Amended Complaint do not satisfy
the standards for claiming a constitutional violation as laid
out by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S.
544 (2007) and Aschroft v. Iqbal, 556 U.S. 662 (2009), the
motion will be granted.

## II.  FACTUAL BACKGROUND

Plaintiff's Amended Complaint sets forth the following
allegations, which the Court will accept as true for purposes of
Defendants' Motion to Dismiss. On July 22, 2013, Plaintiff was
an inmate at 600 University Avenue in Philadelphia, Pennsylvania
("the Facility"), a detention center that houses inmates
qualifying for work release. Am. Compl. ¶ 22. Inmates at the
Facility are permitted to leave the grounds for work, but then
must return after completing work. Id. ¶ 23. Plaintiff alleges
that on or about July 23, 2013, around 5:30 p.m., Plaintiff was
assaulted and brutally beaten by two fellow inmates while he was
sleeping in his room at the Facility. Id. ¶ 25. Plaintiff's
roommate discovered him unconscious and bleeding, and
immediately reported his condition to Sergeant Bledsloe and
Sergeant Ferguson. Id. ¶¶ 26-27.

The sergeants ordered two corrections officers to
transport Plaintiff to an emergency room at a local hospital.
Id. ¶ 28. Despite there being three emergency rooms located

4

within a ten-minute drive from the Facility,[2] id. ¶¶ 29-30,
Plaintiff was transported to Curran-Fromhold Correctional
Facility ("CFCF")--part of the Philadelphia Prison System--which
is located approximately thirty minutes away from the Facility,
id. ¶ 31. Upon arrival at CFCF, a nurse and doctor evaluated
Plaintiff. Id. ¶ 32. At approximately 2:00 a.m. on July 24,
2013, the doctor at CFCF ordered that Plaintiff be transported
to the "Frankford-Torresdale Hospital Emergency Room." Id.

Between the time Plaintiff was injured and the time he
was transported to the hospital, approximately eight hours
elapsed, during which Plaintiff was hemorrhaging. Id. ¶ 33. Once
at Frankford Hospital, Plaintiff was diagnosed with internal
bleeding, a ruptured spleen, fractured ribs on his right side,
and a concussion. Id. ¶ 37. Emergency surgery stopped the
internal bleeding. Id. ¶ 38. Plaintiff underwent various
treatments and procedures, including an IR embolization. Id.
Plaintiff also suffered injuries to his testicles, a
hemoperitoneum, a left apical pneumothorax, injuries to his
nerves and nervous system, contusions, lacerations, and sprains
and strains to his face and body, as well as various other
injuries. Id. ¶ 54. Plaintiff remained at Frankford-Torresdale
Hospital for approximately five days before he was released to

---

[2]      Plaintiff lists "Penn Presbyterian Emergency Room,"
"University of Pennsylvania Emergency Room," and "Thomas
Jefferson Emergency Room." Am. Compl. ¶ 90.

the Infirmary of the Philadelphia Prison System. Id. ¶ 39. As a result of the assault, Plaintiff suffered permanent injuries and a five-inch scar to his groin. Id. ¶ 40. Plaintiff avers that he was not provided proper emergency medical treatment, "as exemplified by [his] multi-hour debacle to see a medical professional at Frankford Hospital, instead of the University of Pennsylvania Emergency Room located four minutes from 600 University Avenue." Id. ¶ 113.

According to Plaintiff, his assault was captured on video at the Facility, but Defendant Osborne "failed to report the crime and/or investigate the assault and battery." Id. ¶ 49. Plaintiff also alleges that there were prior accounts or complaints of harm to inmates, id. ¶ 51, and that Plaintiff's assailants "should have been placed into [the] Alternative and Special Detention program because of their known prior violent acts and propensity for violence," id. ¶ 52. Plaintiff further alleges that neither assailant should have had access to Plaintiff's room, id. ¶ 41, and Defendants failed to properly guard the hallways, id. ¶ 42.

## III. PROCEDURAL HISTORY

On July 8, 2015, Plaintiff commenced this action in federal court, asserting the following nine counts:

| | |
|---|---|
| Count I | Eighth Amendment Denial of Medical Care Against All Defendants |
| Count II | Eighth Amendment Denial of Medical Care Against Defendants John Doe Nurse & Doctor |
| Count III | Eighth Amendment Denial of Medical Care Against Defendant Corizon Health, Inc. |
| Count IV | Eighth Amendment Denial of Medical Care Against Defendant City of Philadelphia |
| Count V | Medical Negligence Claim Against Defendants John Doe Nurse & Doctor |
| Count VI | Medical Negligence Claim Against Defendants John Doe Doctors |
| Count VII | Monell Claim Against City of Philadelphia |
| Count VIII | Supervisory Liability Against Defendants Giorla & Goodman |
| Count IX | Eighth Amendment Against Defendant Osborne |

Compl. ¶¶ 40-67, ECF No. 1.

On August 19, 2015, the City Defendants filed a motion to dismiss. ECF No. 2. In response, Plaintiff filed an Amended Complaint on September 1, 2015. ECF No. 3.

Then, the City Defendants filed their Second Motion to Dismiss on September 11, 2015, ECF No. 4, and the Health

Provider Defendants filed an Answer on October 1, 2015, ECF No. 5. Also on October 1, 2015, Plaintiff responded to the Second Motion to Dismiss. ECF No. 7. After a hearing on the City Defendants' Second Motion to Dismiss, held on November 6, 2015, the motion is now ripe for disposition.

## IV.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[3]  In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien &

---

[3]      The chronicle of the pleading standard under Federal Rule of Civil Procedure 8 is particularly relevant here. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the pleading standard previously set forth in Conley v. Gibson, 355 U.S. 41 (1957). The Court explained that a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. The Court instructed that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." Id. at 563 n.8. Then, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court specifically addressed the pleading standard in the context of a § 1983 suit. The Court stated that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. In other words, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

<u>Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994); <u>Pension Benefit</u>

<u>Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196

(3d Cir. 1993).

## V.   DISCUSSION

Defendants move to dismiss Counts 1, 4, 7, 8, and 9 of

Plaintiff's Amended Complaint for failure to state a claim under

42 U.S.C. § 1983.[4] <u>See generally</u> Defs.' Mot., ECF No. 4. Each

count will be discussed in turn.

---

[4]      Plaintiff also makes reference to 42 U.S.C. § 1985 in
his jurisdictional statement. Am. Compl. ¶ 2. But Plaintiff does
not refer to the § 1985 cause of action at any other point in
his pleadings. To the extent the Amended Complaint is sprinkled
with conspiracy-based language, <u>e.g.</u>, <u>id.</u> ¶¶ 46, 48, the Court
will dismiss without prejudice any § 1985 cause of action for
failure to state a claim upon which relief can be granted. <u>See</u>
<u>Bryson v. Brand Insulations, Inc.</u>, 621 F.2d 556, 559 (3d Cir.
1980) ("The district court may on its own initiative enter an
order dismissing the action provided that the complaint afford a
sufficient basis for the court's action.").

        Section 1985(3) "permits an action to be brought by
one injured by a conspiracy formed 'for the purpose of
depriving, either directly or indirectly, any person or class of
persons of the equal protection of the laws, or of equal
privileges and immunities under the laws.'" <u>Farber v. City of</u>
<u>Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006). To state a claim
under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a
conspiracy; (2) for the purpose of depriving, either directly or
indirectly, any person or class of persons of the equal
protection of the laws, or of equal privileges and immunities
under the laws; and (3) an act in furtherance of the conspiracy;
(4) whereby a person is injured in his person or property or
deprived of any right or privilege of a citizen of the United
States." <u>Id.</u>

        Although Plaintiff states "Defendant Osborne
instituted policies and practices favoring African American

A.   Count 1: Eighth Amendment Denial of Medical Care
     Against All Individual Defendants

Defendants first contend that Plaintiff fails to state
a claim in Count 1 of his Amended Complaint. Defs.' Mot. 4. In
Count 1, Plaintiff asserts that each Defendant[5] failed to provide
medical care to Plaintiff, thereby constituting deliberate
indifference to Plaintiff's serious medical needs. Am. Compl.
¶ 56.

Defendants argue that Plaintiff fails to "indicate
that Commissioner Giorla, Warden Goodman, or Captain Osborne
were aware of his medical needs at the time of his injury" and
also fails to "plausibly suggest that they were somehow
deliberately indifferent to such needs." Defs.' Mot. 4. In
response, Plaintiff contends he "has sufficiently ple[]d [C]ount
[O]ne of his Complaint with regard to Defendants' deliberate

---

inmates," Am. Compl. ¶ 46, Plaintiff has not set out sufficient
facts to show that a racial or otherwise class-based
discriminatory animus lay behind the Defendants' alleged
actions. See Schneller ex rel. Schneller v. Crozer Chester Med.
Ctr., 387 F. App'x 289, 294 (3d Cir. 2010) (nonprecedential).
Moreover, Plaintiff has not indicated the right or privilege of
which he was allegedly deprived by the supposed conspiracy.
Therefore, Plaintiff's claim for conspiracy against Defendants
must be dismissed.

[5]      To the extent Count 1 alleges violations by the City
of Philadelphia, see Defs.' Mot. 5 n.2, these allegations will
be addressed alongside Counts 4 and 7, in which the Court
analyzes the claims against the City in light of Monell v.
Department of Social Services, 436 U.S. 658 (1978).

indifference to the injuries to Plaintiff after the brutal attack." Pl.'s Resp. 4, ECF No. 7.

 1.   The Elements of Plaintiff's Eighth Amendment Claim

Under the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. "The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes.'" Whitley v. Albers, 475 U.S. 312, 318 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 664 (1977)). "The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hope v. Pelzer, 536 U.S. 730, 737 (2002) (internal quotation marks omitted) (quoting Whitley, 475 U.S. at 319). "An express intent to inflict unnecessary pain is not required," but "conduct that does not purport to be a punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley, 475 U.S. at 319.

To establish that prison conditions amount to cruel and unusual punishment, a plaintiff must satisfy a two-part test. Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, Plaintiff must show that the conditions to which he has been subjected are "sufficiently serious," amounting to denial of

"the minimal civilized measure of life's necessities." Id. This is an objective inquiry. Id. To determine whether conditions are "sufficiently serious," the court asks whether the conditions contravene "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Second, the plaintiff must show that "the officials involved acted with 'deliberate indifference' to the inmates' health or safety." Hope, 536 U.S. at 738. This is a subjective inquiry, and deliberate indifference may be inferred "from the fact that the risk of harm is obvious." Id. This notion of deliberate indifference is consistent with "recklessness as the term is defined in criminal law." Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).

It is insufficient for an official to simply be "aware of facts from which the inference can be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. As the Supreme Court has explained,

> a prison official cannot be found liable
> under the Eighth Amendment . . . unless the
> official knows of and disregards an
> excessive risk to inmate health or safety;
> the official must both be aware of facts
> from which the inference could be drawn that
> a substantial risk of serious harm exists,
> and he must also draw the inference.

Id. (discussing an Eighth Amendment claim based on conditions
of confinement).

### 2.   The Plausibility of the Claim

Plaintiff pleads sufficient facts to satisfy the first
part of the two-part test. The Amended Complaint contains
allegations that the delay in medical care to which Plaintiff
was subjected was sufficiently serious. Between the time he was
found injured in his cell and the time he was treated at the
emergency room, Plaintiff was internally hemorrhaging and
suffering from a ruptured spleen, fractured ribs, and a
concussion. Am. Compl. ¶¶ 61-62. A significant delay in
providing medical care to a prisoner in need of emergency
treatment contravenes "evolving standards of decency." Farmer,
511 U.S. at 833.

However, Plaintiff does not allege sufficient facts to
satisfy the second prong of the two-part test. Plaintiff alleges
that "Defendants knew or should have known of Plaintiff's injury
between the assault and being found in his room by Plaintiff's
roommate." Id. ¶ 64. Plaintiff also alleges that "[t]he failure
of Defendants to provide medical care to Plaintiff constitutes
deliberate indifference to the Plaintiff's serious medical needs
in violation of the Eighth Amendment's prohibition of cruel and
unusual punishment." Id. ¶ 56. But such allegations are merely

14

"naked assertions devoid of further factual enhancement" and
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements." Iqbal, 556 U.S. at 678
(internal quotation marks omitted).

Considering the remaining factual allegations entitled
to the presumption of truth, Plaintiff fails to allege specific
acts or omissions by Defendants Giorla, Goodman, or Osborne that
evidence deliberate indifference to Plaintiff's health or
safety. See Farmer, 511 U.S. at 837. There are no facts pleaded
to indicate that Defendants Giorla, Goodman, or Osborne had
knowledge or reason to know of Plaintiff's injuries or their
severity before Plaintiff's roommate found him and reported his
injuries. Without more, the Court is unable to "draw the
reasonable inference that [Defendants are] liable for the
misconduct alleged." Santiago v. Warminster Township, 629 F.3d
121, 132 (3d Cir. 2010). Therefore, Plaintiff's allegations do
not reach "the high bar for deliberate indifference," Hankey v.
Wexford Health Sources, Inc., 383 F. App'x 165, 170 (3d Cir.
2010) (nonprecedential), and Plaintiff fails to state an Eighth
Amendment claim against the individual Defendants for failure to
provide adequate medical care.

B.   Counts 4 and 7: Eighth Amendment Denial of Medical
     Care and Monell Claim Against Defendant City of
     Philadelphia[6]

Defendants next move to dismiss Counts 4 and 7 of
Plaintiff's Amended Complaint for failure to state a claim.
Defs.' Mot. 5-8. In Count 4, Plaintiff asserts that the City
failed to provide medical care to Plaintiff, thereby
constituting deliberate indifference to Plaintiff's serious
medical needs in violation of the Eighth Amendment.[7] Am. Compl.
¶ 86. In Count 7, Plaintiff alleges that the City failed to
train and adequately supervise its officials. Id. ¶¶ 104, 106,
113-14. Plaintiff further alleges that the City maintained
policies and/or customs to provide inadequate and unreasonable
responses to serious injuries sustained by inmates. Id. ¶ 105.

Because Counts 4 and 7, as pleaded, overlap to a
degree, the Court will construe them as containing the following
claims: (1) failure to provide sufficient emergency medical
care, id. ¶¶ 86, 105; (2) failure to adequately train or
supervise officials regarding emergency medical care for
inmates, id. ¶ 113; (3) failure to investigate the assault, id.

---

[6]      Although Plaintiff does not title or describe Count 4
as a Monell claim, Defendants address Counts 4 and 7 together in
their Motion to Dismiss because both Counts bring claims against
the City of Philadelphia based on a policy or custom. Defs.'s
Mot. 5.

[7]      As such, Plaintiff's allegations in Count 4 largely
mirror those in Count 1, but specifically name Defendant City of
Philadelphia.

¶¶ 107, 109, 112; and (4) failure to adequately train or supervise officials regarding protection for inmates, id. ¶¶ 104, 106.

### 1.   The Elements of Plaintiff's Monell Claim

"There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citing Monell, 436 U.S. at 691). Instead, "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984) (citing Monell, 436 U.S. at 690-91).

Under Monell, a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom. 436 U.S. at 692-94.

### 2.   Municipal Policymakers

Defendants argue that, as a threshold matter, Plaintiff fails to plead any facts regarding a municipal policymaker's conduct. Defs.' Mot. 5. In response, Plaintiff alleges that the policymakers for the purposes of his Monell claim are Defendants Goodman and Giorla, who established the

17

Philadelphia Prison System policies or customs which ultimately lead to Plaintiff's injuries. Pl.'s Resp. 5-6.

To satisfy the first element of a Monell claim, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). To determine whether an official is a policymaker, a court must ask whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question. Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006). Then, the court must ask whether the official's authority to make the policy is "final and unreviewable." Id.

Here, Plaintiff claims that Defendant Giorla, as commissioner of the Philadelphia Prison System, and Defendant Goodman, as a warden, "were employed and authorized by Defendant City of Philadelphia to exercise his or her discretion to make decisions, take action or inaction, adopt policies, permit practices or utilize procedures within each respective role, without oversight or with meaningful review." Am. Compl. ¶ 19.

Under Pennsylvania law, the Prison Board is the authorized policymaker for jails or county prisons for the purposes of making policy decisions regarding "the safekeeping,

18

discipline and employment of inmates." 61 Pa. Cons. Stat. §
1731(a)(3); see also id. § 1732(a) (requiring "the approval of a
majority of all members of the board").

However, while Plaintiff makes the conclusory
allegation that Defendants Giorla and Goodman had final,
unreviewable discretion in some areas of prison policymaking,
the Court finds no facts in the Amended Complaint that support
his conclusion. See, e.g., Cortlessa v. Cty. of Chester, No. 04-
1039, 2006 WL 1490145, at *8 (E.D. Pa. May 24, 2006) ("The mere
fact that Warden Masters, as part of his duties, supervised
prison officers is, by itself, insufficient to confer
'policymaker' status.").

Given the absence of facts alleged by Plaintiff, the
Court cannot draw the inference that Defendants Giorla and
Goodman acted as final policymakers with respect to the Facility
and its alleged policies. As such, municipal liability cannot be
predicated upon their actions. Therefore, Plaintiff's claims
will be dismissed for failure to plead facts regarding a
municipal policymaker's conduct.

### 3. Municipal Policy or Custom

Additionally, to survive Defendants' motion to
dismiss, Plaintiff must have set forth sufficient facts
indicating a policy or custom of the City. "Policy is made when

a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews, 895 F.2d at 1480 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)), superseded in part by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (1991). A custom exists where there is a "course of conduct, although not specifically endorsed or authorized by law" that has become "so well-settled and permanent as virtually to constitute law." Bielevicz, 915 F.2d at 850. In any event, "vague assertions" of policy or custom are not sufficient to impose liability. Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995); see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 822 (1985) (explaining that the policy upon which a plaintiff relies cannot be "nebulous" or "removed from the constitutional violation").

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584.

First, and most straightforwardly, a policy or custom may be inferred from the acts or omissions of an officer-employee where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act

20

complained of is simply an implementation of that policy." Id. at 584 (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 417 (1997)). Second, a policy or custom may be inferred where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. Third, a policy or custom may be inferred where "the policymaker has failed to act affirmatively at all," but "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (citations omitted).

Each basis for Plaintiff's claim against the City must be scrutinized for the existence of a policy or custom, because it is an element of the claim that Plaintiff must sufficiently plead to withstand Defendants' motion. Monell, 436 U.S. at 694.

a.   Alleged Failure to Provide Sufficient
     Medical Care

Plaintiff first seeks to state a claim against the City for failure to provide sufficient emergency medical care in violation of the Eighth Amendment. Am. Compl. ¶¶ 85-96, 105, 110. But Plaintiff fails to allege the existence of a policy or custom. Natale, 318 F.3d at 584. Plaintiff alleges that,

21

> [a]s a result of the aforementioned
> policies, practices and procedures of
> Defendants in conjunction with the
> established custom of Defendant City of
> Philadelphia, Plaintiff was left without
> medical attention, was intentionally left to
> suffer internal injuries and was made to
> endure significant injuries for a period of
> eight hours before proper medical treatment
> was made available.

Am. Compl. ¶ 95. Plaintiff states that there were three

emergency rooms less than ten minutes from the Facility when

Sergeants Bledsloe and Ferguson ordered two corrections officers

to transport Plaintiff to an emergency room at a local hospital.

Id. ¶¶ 29, 30. But Plaintiff was transported to CFCF, nearly

thirty minutes from the Facility. Id. ¶ 31. Plaintiff alleges

that as a result of the City's policies and customs, Plaintiff

was "forced to suffer eight hours of pain and internal bleeding

until he was treated for his life-threatening injuries." Id.

¶ 110.

Although Plaintiff's well-pleaded factual allegations

regarding his injuries are entitled the presumption of truth,

Plaintiff fails to sufficiently plead any facts from which the

Court could discern the existence or content of any policy or

custom relating to those injuries. The "aforementioned policies,

practices and procedures" to which Plaintiff refers, e.g., id.

¶ 74, are not mentioned at all.

Of course, the absence of a policy may provide the basis for a Monell claim if sufficiently pleaded. In Natale v. Camden County Correctional Facility, the Third Circuit determined that a prison with "no policy ensuring that an inmate having need for medication for a serious medical condition would be given that medication during the first 72 hours of incarceration" was a "particularly glaring omission in a program of medical care." Natale, 318 F.3d at 584-85. The court concluded that a jury could determine the absence of such a policy was "sufficiently obvious to constitute deliberate indifference to those inmates' medical needs," and thus the plaintiff's Monell claim should have survived summary judgment. Id. at 585.

Here, Plaintiff's Amended Complaint, on its face, does not allege the absence of a policy to address an inmate's emergency medical situation. Rather, Plaintiff continually refers to the City's "developed and maintained policies and / or customs." Am. Compl. ¶ 103; see also id. ¶¶ 95, 96, 105, 110, 114. As such, it is the alleged existence of an inadequate policy or custom (and not the absence of a policy) that forms the basis of Plaintiff's Monell claim. Therefore, Natale is inapplicable here.

Without sufficient facts indicating the existence of an inadequate policy or custom and/or the absence of a policy,

Plaintiff does not sufficiently plead a <u>Monell</u> claim for a violation of the Eighth Amendment.[8] Because Plaintiff did not set forth sufficient facts to satisfy the first threshold requirement, the Court need not probe further as to whether the City Defendants acted with deliberate indifference.[9] Therefore,

---

[8]     In fact, it remains unclear whether Plaintiff alleges that he was transported to CFCF pursuant to a municipal policy or an independent choice by the correctional officer. Or, alternatively, whether Plaintiff intended to allege there was no policy at all or the correctional officer simply chose to disregard an existing policy.

[9]     However, with regard to deliberate action, it should be noted that, like in <u>Natale</u>, the failure to establish a policy that addresses the emergency medical needs of inmates could create a risk that is sufficiently obvious for the court to infer deliberate indifference to those inmates' medical needs. <u>Natale</u>, 318 F.3d at 585. Nevertheless, Plaintiff has not pled facts from which the Court can infer that the City failed to establish a policy.

        This theory of liability highlights the difference between alleging a municipality's deliberate indifference and alleging an individual officer's deliberate indifference in his or her official capacity. The difference may, at times, seem to create an anomalous result. The "policy or custom" standard for a <u>Monell</u> claim creates a wider umbrella from which the Court may infer deliberate indifference because the policy or custom itself may be inferred from the acts or omissions of an officer. <u>Natale</u>, 318 F.3d at 584. On the other hand, to state a claim against an individual defendant, as Plaintiff attempts to do in Count 1, the plaintiff must show that the official was personally involved and acted with deliberate indifference to the plaintiff's health or safety--without the benefit of an inferential step. <u>Hope</u>, 536 U.S. at 738. Hopefully the Third Circuit will address this apparent anomaly in due time.

        In any event, Plaintiff has also failed to plead facts indicating that such deliberate indifference, were it to exist, was the "moving force" behind the alleged violation. <u>See</u> <u>Eichelman v. Lancaster County</u>, 510 F. Supp. 2d 377, 396 (E.D.

Plaintiff's claim against the City for failure to provide

adequate medical care will be dismissed.

---

Pa. 2007) (citing <u>Simmons v. City of Philadelphia</u>, 947 F.2d
1042, 1062-63 (3d Cir. 1991)) (explaining that a plaintiff may
show that a defective policy or custom was the "moving force"
behind the violation by indicating that "alternatives for
preventing this type of harm were known and available to
policymakers but that the policymakers either deliberately chose
not to pursue them or acquiesced in a longstanding policy or
custom of inaction in this regard").

        Finally, in terms of causation, even if the Court were
to draw an inference in Plaintiff's favor that there was an
inadequate policy or custom as to emergency care for inmates,
Plaintiff must also allege facts sufficient to indicate that his
injury was caused by the identified policy or custom. <u>Bell v.
City of Philadelphia</u>, Nos. 14-4753, 15-1004, 2015 WL 6387436, at
*2 (3d Cir. Oct. 22, 2015) (nonprecedential). Specifically, this
means Plaintiff "bears the burden of proving that such policy or
custom was the proximate cause of the injuries suffered." <u>Watson
v. Abington Township</u>, 478 F.3d 144, 156 (3d Cir. 2007). "[I]f
occurrence of the specific violation was made reasonably
probable by permitted continuance of the custom," then a
"sufficiently close causal link" exists. <u>Bielevicz</u>, 915 F.2d at
851.

        Plaintiff has not alleged any facts allowing the Court
to infer there was "a specific and obvious problem with a
procedure employed by the defendant[s] that gave rise to a
likelihood of constitutional deprivation." <u>Simonds v. Delaware
County</u>, No. 13-7565, 2015 WL 1954364, at *5 (E.D. Pa. Apr. 30,
2015) (discussing <u>Natale</u> and <u>Berg v. County of Allegheny</u>, 219
F.3d 261, 277 (3d Cir. 2000)). Based on the factual allegations
in the complaint, the Court would have to make another
inferential leap that Plaintiff's pain and the severity of his
injuries were made reasonably probable by an unidentified,
inadequate policy or the permitted continuance of an
unidentified custom relating to emergency medical care for
severely injured inmates.

b.   Alleged Failure to Train or Supervise
     Officials Regarding Emergency Medical
     Treatment

Plaintiff also seeks to state a claim against the City for failure to adequately train or supervise prison officials regarding emergency medical care for inmates. Am. Compl. ¶ 113.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). But a failure to train or supervise "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" Id. (alternations in original) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)); see also Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999).

Deliberate indifference for a failure-to-train claim under the Eighth Amendment is a "stringent" standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cty., 520 U.S. at 410. To demonstrate deliberate indifference where a plaintiff claims failure to train or supervise, the plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees." Thomas v. Cumberland County, 749 F.3d 217, 223 (3d Cir. 2014) (quoting Connick, 131 S. Ct. at 1360).

26

However, sometimes "the need for training 'can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations." Id. (quoting Canton, 489 U.S. at 390 n.10). While "it is possible to establish deliberate indifference based on a single incident[,] . . . this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014). "To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its officers. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" Id. at 223-24 (quoting Bryan Cty., 520 U.S. at 409).

If a plaintiff is able to meet the stringent standard for deliberate indifference, the plaintiff must then demonstrate that the failure to train proximately caused his constitutional injury by identifying a particular failure in a training program that is "closely related to the ultimate injury." Canton, 489 U.S. at 391. Liability attaches only if "the deficiency in

training actually caused the [constitutional injury]." <u>Id.</u>
(explaining that the plaintiff must show that the injury would
"have been avoided had the employee been trained under a program
that was not deficient in the identified respect").

    The present case does not present a situation where
Plaintiff "failed to plead any facts whatsoever." <u>Tripodi v.
North Coventry Township</u>, 616 F. App'x 521, 523 (3d Cir. 2015)
(per curiam) (nonprecedential). Rather, Plaintiff states that
the City failed to adequately supervise and train its officers
regarding the need for emergency treatment and the method by
which emergency aid is administered to seriously injured
inmates, "as exemplified by Plaintiff's multi-hour debacle to
see a medical professional at Frankford Hospital, instead of the
University of Pennsylvania Emergency Room located four minutes
from 600 University Avenue." Am. Compl. ¶ 113; <u>see also id.</u> ¶¶
28-32.

    But to plead a failure-to-train claim, Plaintiff still
must allege that "the municipality had a policy." <u>Vargas v. City
of Philadelphia</u>, 783 F.3d 962, 974 (3d Cir. 2015). Here,
Plaintiff does not indicate the existence or nonexistence of a
training program or policy. Without an "identified" deficiency,
<u>Canton</u>, 489 U.S. at 391, Plaintiff has not sufficiently pleaded
a failure-to-train claim against the City.

c.   <u>Alleged Failure to Investigate the Assault</u>

Plaintiff next seeks to state a claim against the City for failure to investigate the assault after it occurred. Am. Compl. ¶¶ 107, 109, 112. Plaintiff alleges that as a result of the City's policies and customs, Defendants Giorla, Goodman, and Osborne were permitted to attempt to cover up the assault against Plaintiff. <u>Id.</u> ¶¶ 109, 112. However, such conclusory statements, without more, fail to adequately allege that the City adopted and maintained a policy, custom, or practice that resulted in a violation of Plaintiff's rights.

While the Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners," <u>Farmer</u>, 511 U.S. at 833 (internal quotation omitted), Plaintiff's allegations that Defendants concealed or failed to investigate the assault refer to Defendants' actions or inactions after the event.[10] A failure-to-protect claim under the Eighth Amendment is, by its very nature, forward looking. Plaintiff's allegations do not indicate that prison officials actually knew or were aware of any excessive risk to Plaintiff's safety prior to Plaintiff's assault. <u>See</u> <u>Bistrian v. Levi</u>, 696 F.3d 352, 367-68 (3d Cir. 2012). Therefore, Plaintiff has failed to state a claim against the City on this basis. <u>See</u> <u>Mulholland</u>

---

[10]   To the extent these allegations seek to state a conspiracy claim under § 1985, as previously stated <u>supra</u> note 4, the Court will dismiss the claim.

v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.").

> d.   Alleged Failure to Train or Supervise
>      Officials as to Protection for Inmates

Finally, Plaintiff seeks to state a claim against the City for failure to train or supervise prison officials as to inmate protection. Specifically, Plaintiff alleges that the City failed to supervise, train, retrain, or discipline against the following: (1) recklessness and deliberate indifference in the monitoring and safeguarding of inmates, Am. Compl. ¶ 104; (2) permitting inmates to access other inmates' rooms, failing to monitor inmates, and failing to stop inmates from assaulting others, id. ¶ 106; and (3) a code of silence or complicity of violence within the prison system, id. ¶ 108.

The legal landscape articulated for the purposes of Plaintiff's failure-to-train claim regarding medical care applies here as well. "Where a plaintiff claims that the municipality has not directly inflicted an injury," but instead failed to train, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bryan Cty., 520 U.S. at 405. Plaintiff "would at least need to allege specific facts showing that an unconstitutional policy or custom

30

existed, what it consisted of, and how it affected [him] in
[his] particular case." Tarbox v. Bulter Township, No. 14-1346,
2015 WL 6157173, at *10 (M.D. Pa. Oct. 19, 2015) (explaining
that the plaintiff's conclusory allegations regarding the
defendant-township's failure to train and/or educate police
officers were insufficient to invoke Monell liability). On the
other hand, "if a concededly valid policy is unconstitutionally
applied by a municipal employee, the city is liable if the
employee has not been adequately trained and the constitutional
wrong has been caused by that failure to train." Canton, 489
U.S. at 387.

    Moreover, "a municipality can only be liable under
§ 1983 where the failure to train demonstrates a 'deliberate' or
'conscious' choice by the municipality." Doe v. Luzerne County,
660 F.3d 169, 179 (3d Cir. 2011) (citations omitted). "To
determine whether a municipality's alleged failure to train its
employees amounted to a deliberate or conscious choice, it must
be shown that '(1) municipal policymakers know that employees
will confront a particular situation; (2) the situation involves
a difficult choice or a history of employees mishandling; and
(3) the wrong choice by an employee will frequently cause
deprivation of constitutional rights.'" Id. at 179–80 (citing
Carter, 181 F.3d at 357). Finally, "the identified deficiency in
[the] training program must be closely related to the ultimate

[constitutional] injury." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 325 (3d Cir. 2005) (internal quotations omitted) (citations omitted).

Assuming for the limited purposes of this analysis that Defendants Goodman and Giorla are policymakers, it could be plausible that they knew their employees would confront a situation where inmates would become violent with one another. But Plaintiff does not allege a history of employees mishandling situations of inmate-on-inmate violence.

Plaintiff states that Defendants Goodman and Giorla knew or should have known, "based on prior accounts/complaints," of Defendant Osborne's policies and practices,[11] which could allegedly result in serious harm to the inmates. Am. Compl. ¶¶ 50, 51. Yet a blanket reference to "prior accounts [and] complaints," <u>id.</u>, is "not sufficient to create a pattern of violations," <u>Thomas</u>, 749 F.3d at 225. Moreover, "mere recitation of the number of complaints filed" cannot "suffice to prove a policy or custom." <u>Mariana v. City of Pittsburgh</u>, 624 F. Supp. 506, 511 (W.D. Pa. 1986). While evidence of regularly occurring fights would be "relevant to whether his injury was a 'highly predictable consequence' of the failure to train . . . for single-incident liability," <u>Thomas</u>, 749 F.3d at 225, Plaintiff

---

[11]     Plaintiff does not actually identify Defendant Osborne's policies and practices.

has failed to allege any facts suggesting a specific "risk from a particular glaring omission in a training regiment," Bryan Cty., 520 U.S. at 410.

Moreover, there are not sufficiently pleaded factual allegations to indicate the wrong choice by an employee in implementing a policy that could frequently cause deprivation of constitutional rights, Carter, 181 F.3d at 357, because there is no policy identified by Plaintiff. But even if Plaintiff had pointed to a "wrong choice" by an employee in a single instance, it would not be sufficient for the Court to infer the City disregarded a known or obvious risk of harm to Plaintiff. The thrust of Monell itself is that a municipality shall not be vicariously liable for the acts of its officials.[12] Monell, 436 U.S. at 692. Therefore, Plaintiff has failed to state a claim against the City for failure to train or supervise officials as to protection for inmates.

C.   Count 8: Supervisory Liability Against Defendants
     Giorla and Goodman

Defendants next move to dismiss Count 8 of Plaintiff's Amended Complaint for failure to state a claim. Defs.' Mot. 8-9.

---

[12]      Otherwise, "'failure to train' would become a talismanic incantation producing municipal liability '[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee'--which is what Monell rejects." Connick, 563 U.S. at 74 (Scalia, J., concurring) (quoting Canton, 489 U.S. at 392).

In Count 8, Plaintiff brings a claim of supervisory liability against Defendants Giorla and Goodman. Am. Compl. ¶¶ 115-20. Plaintiff alleges that Giorla and Goodman failed to supervise, train, and discipline "against reckless and deliberate indifference with regard to Captain Osborne's actions and inactions in failing to monitor and safeguard the inmates." Id. ¶ 117. Plaintiff further alleges that it was the policy and / or custom of Giorla and Goodman to fail to supervise, train, re-train, or discipline "against the complicity of Captain Osborne in violating the Constitutional Rights of inmates," as well as "to acquiesce and allow violent and criminal assaults and batteries to occur" at the Facility. Id. ¶¶ 118-19. Plaintiff alleges that, as a result of Giorla and Goodman's policies and customs, officers such as Captain Osborne "believed that their actions would not be properly monitored . . . and that misconduct would not be investigated or sanctioned, but would be tolerated." Id. ¶ 120.

### 1.   The Elements of Plaintiff's Claim

As previously stated, failure to train or supervise employees may, "[i]n limited circumstances . . . rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. But different standards of liability under § 1983 apply to the City, as a municipality, and

34

Defendants Giorla and Goodman, as supervisors. <u>Cannon</u>, 2014 WL 7399037, at *3. As to supervisors, there are two avenues of liability:

> First, like municipalities, "[i]ndividuals who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."

<u>Cannon</u>, 2014 WL 7399037, at *3 (internal citations omitted). The elements for supervisory liability are "met where the supervisor 'failed to respond appropriately in the face of an awareness of a pattern of such injuries' or where 'the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support' a finding of deliberate indifference." <u>Parkell v. Markell</u>, No. 14-3989, 2015 WL 4523521, at *3 (3d Cir. 2015) (nonprecedential) (quoting <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)). The Third Circuit has stated that allegations of supervisory liability amounting to "the [supervisor] told the [supervisee] to do what [he or she] did" are merely "formulaic recitation[s] of the elements of a [supervisory liability] claim." <u>Santiago</u>, 629 F.3d at 131.

35

2.   The Plausibility of the Claim

Plaintiff has failed to set forth sufficient facts to pursue either avenue for supervisory liability against Defendants Giorla and Goodman.

First, Plaintiff has not alleged facts indicating Defendants Giorla or Goodman, with deliberate indifference, established and maintained a policy or custom that directly caused a constitutional harm. See Cannon, 2014 WL 7399037, at *3. Plaintiff merely states that "Defendant Giorla and Goodman failed to supervise against, train and/or re-train against, and discipline against recklessness and deliberate indifference with regard to Captain Osborne's actions and inactions in failing to monitor and safeguard the inmates housed" at the Facility.[13] Am. Comp. ¶ 117.

Plaintiff fails to point to the particular policy or custom that would form the basis of his supervisory liability claim against Defendants Giorla and Goodman, and he does not plead facts sufficient for the Court to make an inference that such a policy or custom exists. See Cannon, 2014 WL 7399037, at *3.

Second, Plaintiff has not alleged facts indicating that Defendants Giorla or Goodman participated in a violation of

---

[13]    Similar conclusory statements are made in paragraphs 118-20 of the Amended Complaint.

Plaintiff's rights, directed others to violate them, or acquiesced to a violation. <u>See</u> <u>id.</u> There are no well-pleaded factual allegations to support an inference that Defendants Giorla or Goodman "failed to respond appropriately in the face of an awareness of a pattern of such injuries." <u>Parkell</u>, 2015 WL 4523521, at *3. Again, Plaintiff's reference to "prior accounts / complaints," Am. Compl. ¶¶ 50-51, without more, does not establish a pattern. Therefore, because the Complaint contains "no specific factual allegations fleshing out the claims of supervisory liability," <u>Wood v. Williams</u>, 568 F. App'x 100, 107 (3d Cir. 2014) (nonprecedential), the Court will dismiss Count 8 of Plaintiff's Amended Complaint against Defendants Giorla and Goodman.

> D.   <u>Count 9: Eighth Amendment Against Defendant Osborne</u>

Lastly, Defendants move to dismiss Count 9 of Plaintiff's Amended Complaint. Defs.' Mot. 9-10. In Count 9, Plaintiff alleges that Defendant Osborne "intentionally and unlawfully violated Plaintiff's Constitutional Rights by subjecting Plaintiff to cruel and unusual punishment" at the Facility. Am. Compl. ¶ 123. Plaintiff states that "[i]t is established law that Defendant Osborne is prohibited from engaging in a cover-up by failing to report the crime and / or investigate the assault and battery of Plaintiff." <u>Id.</u> ¶ 125.

Defendants argue that Count 9 fails to state a claim because "Plaintiff's only factual allegations against Captain Osborne are that she serves as the manager of the prison facility where the attack occurred, and that she failed to report or investigate the attack." Defs.' Mot. 9 (citing Am. Compl. ¶¶ 9, 49). Defendants further argue that: (1) the Eighth Amendment does not require a public official to investigate a crime and (2) in any event, Defendant Osborne is afforded qualified immunity. Id. at 9-10.

### 1.   The Elements of Plaintiff's Claim

As previously stated, to establish a failure-to-protect claim, a prisoner "must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." Bistrian, 696 F.3d at 367 (citing Farmer, 511 U.S. at 834).

### 2.   The Plausibility of the Claim

The allegations in Plaintiff's Amended Complaint involving Defendant Osborne and the purported violation of Plaintiff's Eighth Amendment rights are as follows:

> 24.   Defendant Osborne provided favoritism to African-American inmates, including inmates Karon Reeves and Tyrek Burnett.

38

. . .

46.  Defendant Osborne instituted policies
     and practices favoring African American
     inmates and that Karon Reeves or Tyrek
     Burnett used said policies and
     practices to effectuate the assault on
     Plaintiff.

47.  Defendant Osborne failed to enforce
     prison safety guidelines and policies
     with regard to inmates being housed at
     600 University Avenue.

48.  Defendant Osborne engaged in
     intentional and conspiratorial actions
     to cover up the actions of Inmates
     Reeves and Burnett and to hinder the
     due course of justice.

49.  Though Reeves and Burnett were caught
     on video engaged in the assault of
     Plaintiff, Defendant Osborne engaged in
     a cover-up and failed to report the
     crime and/or investigate the assault
     and battery.

Am. Compl. ¶¶ 24, 46-49.

Even taking these allegations as true, they are not

sufficient to support Plaintiff's Eighth Amendment claim against

Defendant Osborne. There is no averment in Plaintiff's Amended

Complaint indicating Defendant Osborne was personally aware of

any facts suggesting that a substantial risk of serious harm

existed for Plaintiff. Cf. Bistrian, 696 F.3d at 368-71

(concluding that the plaintiff stated a plausible failure-to-

protect claim where he alleged, among other things, that he had

advised prison officials that his assailant had previously

threatened him). Plaintiff's fleeting mention of "prior accounts / complaints," Am. Compl. ¶¶ 50-51, is still insufficient. See Robinson v. City of Philadelphia, No. 15-1574, 2015 WL 5965003, at *12 (E.D. Pa. Oct. 13, 2015) (explaining that the defendant's status as prison commissioner "does not equate to factual support for Plaintiff's assertion that prior complaints about situations similar to that described by Plaintiff had been made" or that the defendant "was aware of them"); see also Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) ("[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.").

Plaintiff states that neither of his assailants "should have been placed into [the] Alternative and Special Detention program because of their known prior violent acts and propensity for violence." Am. Compl. ¶ 52. But the Third Circuit has explained that allegations stating that "the risk of harm that occurred was the risk that an inmate with a history of violence might attack another inmate for an unknown reason" are too speculative to give rise to an inference of deliberate indifference. Bistrian, 696 F.3d at 371. As such, the Court cannot reasonably infer from the well-pleaded factual allegations in Plaintiff's Amended Complaint that Defendant

Osborne failed to protect Plaintiff in light of a known or obvious consequence of his actions or inactions.

### 3. Qualified Immunity

The City Defendants also argue that Count 9 against Defendant Osborne should be dismissed on grounds of qualified immunity. "[W]hen a public official's actions give rise to a § 1983 claim, the privilege of qualified immunity can serve as a shield from civil suit in certain circumstances." Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). "The primary purpose of affording public officials the privilege of qualified immunity is to protect them from undue interference with their duties and from potentially disabling threats of liability." Id. (quoting Elder v. Holloway, 510 U.S. 510, 514 (1994)). The Supreme Court has consistently "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991); see also Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir. 2008) (explaining that "any claim of qualified immunity must be resolved at the earliest possible stage of the litigation").

Here, Defendant Osborne is a captain within the Philadelphia Prison System and was the senior officer in charge at the Facility at all relevant times. Am. Compl. ¶ 9. As a

41

public official, Defendant Osborne would be entitled to
qualified immunity. Hynson v. City of Chester, 827 F.2d 932, 934
(3d Cir. 1987) ("Prison officials are entitled to qualified
immunity from monetary liability if they are acting reasonably
in the good faith fulfillment of their responsibilities.").

Of course, qualified immunity only shields officials
"insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982). Thus, to overcome the defense of qualified immunity, a
plaintiff must allege facts showing that the defendant's conduct
(1) "violated a statutory or constitutional right," and
(2) "that the right was 'clearly established' at the time of the
challenged conduct." Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2080
(2011).

Here, Plaintiff has not set forth sufficient facts to
overcome the defense of qualified immunity. Plaintiff's
allegations refer to Defendant Osborne's failure to investigate
the assault against Plaintiff after it occurred. Am. Compl.
¶¶ 24, 46. But this alone does not indicate that Defendant
Osborne violated the Eighth Amendment. Moreover, Plaintiff has
not claimed Defendant Osborne's conduct violated a different
statutory or constitutional right, nor has he pled any facts to
that end. Therefore, Plaintiff has not answered "the initial

question in a section 1983 action [of] 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Estate of Smith v. Marasco, 318 F.3d 497, 505-06 (quoting Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002)). Therefore, because Plaintiff has not set forth factual allegations suggesting Defendant Osborne violated a clearly established right, Defendant Osborne's conduct is cloaked with the mantle of qualified immunity.

      E.    Leave to Amend

Generally, a court should freely grant leave to amend the complaint when justice so requires "unless it would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Here, Plaintiff amended his complaint once as of right. ECF No. 3. "Neither inequity nor futility of amendment is present" and there is no indication that Plaintiff "lacks good faith or proper motives." Id. Therefore, the Court will permit Plaintiff leave to amend his complaint to cure the deficiencies as to Counts 1, 4, 7, 8, and 9.

**VI.  CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion and dismiss Counts 1, 4, 7, 8, and 9 of Plaintiff's Amended Complaint with leave to amend. Count 1 against all of the individual Defendants is dismissed because

Plaintiff did not sufficiently plead the deliberate indifference element of his Eighth Amendment claim. Counts 4 and 7 against the City are dismissed because Plaintiff fails to identify the policy or custom on which he relies. Count 8 for supervisory liability is dismissed because Plaintiff fails to point to a policy or custom implemented by Defendants Giorla or Goodman, and Plaintiff fails to allege facts indicating Defendants Giorla or Goodman participated in a violation of Plaintiff's rights. Count 9 against Defendant Osborne is dismissed because Plaintiff did not sufficiently plead a violation of any constitutional or statutory right, and Defendant Osborne's conduct, as currently pleaded, is entitled to qualified immunity. An appropriate order follows.