IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER BUONICONTI,               :     CIVIL ACTION
                                      :     NO. 15-3787
          Plaintiff,                  :
                                      :
     v.                               :
                                      :
CITY OF PHILADELPHIA, et al.,         :
                                      :
          Defendants.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        December 13, 2016

## Table of Contents

I.    FACTUAL BACKGROUND ..................................... 4

II.   PROCEDURAL HISTORY ......................................6

III.  LEGAL STANDARD ..........................................7

IV.   DISCUSSION ..............................................9

      A.   Count 1: Eighth Amendment Denial of Medical Care
           Against All Defendants ...........................9

      B.   Counts 4 and 7: Eighth Amendment Denial of
           Medical Care and Monell Claim Against Defendant
           City of Philadelphia .............................14

           1.   Municipal Policymaker .......................16

           2.   Policy or Custom ............................17

                a.   Adequate Medical Care ..................18

                b.   Adequate Security ......................21

                c.   Failure to Train .......................23

C. Count 8: Supervisory Liability Claim Against
   Defendants Giorla and Goodman .....................27

D. Count 9: Eighth Amendment Claim Against
   Defendant Osborne ................................30

V. LEAVE TO AMEND .........................................32

VI. CONCLUSION .............................................33

In this action, Plaintiff Christopher Buoniconti ("Plaintiff"), a former inmate of the Philadelphia Prison System, alleges that he was brutally attacked by two other inmates while living at a detention center for inmates qualifying for work release.  Following the attack, Plaintiff alleges, he was taken to another prison facility instead of one of three hospitals less than a ten-minute drive away, despite suffering from severe injuries including internal bleeding, a ruptured spleen, a rib fracture, and a collapsed lung. According to Plaintiff, approximately eight hours elapsed before he was taken to a hospital for emergency surgery, during which time his injuries worsened.  Plaintiff claims that the Philadelphia Prison System, the City of Philadelphia, and certain of their employees are responsible for failing to protect him from violence from other inmates, and that once the attack occurred, various prison employees, medical providers, and social workers failed to provide him with adequate medical care, in violation of his constitutional rights.

Plaintiff brought this action under 42 U.S.C. § 1983 against the City of Philadelphia ("the City"); Louis Giorla, the commissioner of the Philadelphia Prison System ("Giorla"); Juanita Goodman, the warden of the Philadelphia Prison System for the Alternative and Special Detention Division ("Goodman"); Captain Osborne, a captain within the Philadelphia Prisons System ("Osborne"); and John Does 1-2, corrections officers employed by the Philadelphia Prison System ("the Corrections Officer Defendants") (collectively, "the City Defendants"). Plaintiff also brings claims against Corizon Health, Inc. ("Corizon"), a corporation contracted by the City of Philadelphia to provide medical services to inmates housed in the Philadelphia Prison System, and John Does 3-4, who are nurses, doctors, and/or medical providers employed by Corizon ("the Health Provider Defendants").

Following the Court's December 7, 2015 dismissal without prejudice of Plaintiff's claims against the City, Giorla, Goodman, and Osborne, Plaintiff filed a second amended complaint, bringing the same claims but adding additional factual allegations.  The City Defendants have again moved to dismiss Plaintiff's claims against the City, Giorla, Goodman, and Osborne for failure to state a claim.

For the reasons that follow, the Court will grant the City Defendants' motion and dismiss Counts 1, 4, 7, 8, and 9 of

3

Plaintiff's second amended complaint against the City, Giorla, Goodman, and Osborne with prejudice.

## I.   FACTUAL BACKGROUND

In his second amended complaint, Plaintiff alleges the following facts, all of which are presumed to be true for purposes of this motion.

On July 22, 2013, Plaintiff was housed at 600 University Avenue in Philadelphia, Pennsylvania ("the Facility"), a detention center housing Philadelphia Prison System inmates who qualify for work release.  Second Am. Compl. ("SAC") ¶ 22, ECF No. 19.  Plaintiff alleges that on July 23, 2013, at around 5:30 p.m., two inmates, Karon Reeves and Tyrek Burnett, brutally assaulted and beat him.  Id. ¶ 25. Plaintiff's roommate discovered him unconscious and bleeding at around 9:30 p.m. the same night.  Id. ¶ 26.  According to Plaintiff, his roommate reported the incident to two on-duty sergeants, who ordered two corrections officers to transport Plaintiff to an emergency room at a local hospital.  Id. ¶ 28.

Despite the existence of three emergency rooms within a ten-minute drive from the Facility, the corrections officers transported Plaintiff to Curran-Fromhold Correctional Facility ("CFCF") – which is part of the Philadelphia Prison System – nearly thirty minutes away from the Facility.  Id. ¶¶ 29, 30,

4

35.   At approximately 2:00 a.m. on July 24, following Plaintiff's evaluation by a doctor and nurse, a CFCF doctor ordered that Plaintiff be transported to the Frankford-Torresdale Hospital Emergency Room ("Frankford Hospital").  Id. ¶ 36.

Plaintiff alleges that approximately eight hours elapsed from the time of the attack until Plaintiff was transported to a hospital to receive medical treatment, during which time Plaintiff was internally hemorrhaging blood.  Id. ¶ 37.  At Frankford Hospital, Plaintiff was diagnosed with massive internal bleeding, a ruptured spleen, fractured ribs on the right side, and a concussion.  Id. ¶ 42.  Doctors performed emergency surgery, after which Plaintiff received several additional medical treatments and procedures, including an embolization.  Id. ¶ 43.  Plaintiff's injuries included a ruptured spleen, trauma to his testicles, hemoperitoneum, fractures of the tenth rib, and left apical pneumothorax.  Id. ¶ 62.  Following his surgery and medical procedures, Plaintiff was hospitalized for five days before he was released to a prison infirmary.  Id. ¶ 44.

According to Plaintiff, he now suffers permanent injuries as a result of the attack and Defendants' failure to provide adequate medical care.  Id. ¶ 45.  He also alleges that

5

he has experienced and continues to experience severe physical pain, mental anguish, anxiety, and humiliation.  Id. ¶ 62.

## II.  PROCEDURAL HISTORY

Plaintiff commenced this action on July 8, 2015, ECF No. 1, and amended his complaint on September 1, 2015, ECF No. 3.  Plaintiff's amended complaint asserted the following claims: (1) denial of medical care in violation of the Eighth Amendment against all Defendants (Count I), Defendants John Doe Nurse and Doctor (Count II), Corizon (Count III), and the City (Count IV); (2) state law medical negligence against Defendants John Doe Nurse and Doctor (Count V) and Defendants John Doe Doctors (Count VI); (3) a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) against the City (Count VII); (4) supervisory liability against Giorla and Goodman (Count VIII); and (5) an Eighth Amendment claim against Osborne based on her alleged failure to report and investigate the assault. ECF No. 3.

The City Defendants moved to dismiss Plaintiff's amended complaint for failure to state a claim in Counts 1, 4, 7, 8, and 9 with respect to the City, Giorla, Goodman, and Osborne.  ECF No. 4.  Following a hearing, the Court granted the City Defendants' motion in a memorandum and order dated December 7, 2015, and dismissed Counts 1, 4, 7, 8, and 9 against the

6

City, Giorla, Goodman, and Osborne without prejudice.  ECF Nos. 16, 17.[1]

Plaintiff filed a second amended complaint on December 17, 2015, asserting the same claims against the same defendants. ECF No. 19.  The City Defendants again moved to dismiss Plaintiff's claims in Counts 1, 4, 7, 8, and 9 against the City, Giorla, Goodman, and Osborne, ECF No. 20, and Plaintiff filed a response, ECF No. 22.  The motion is now ripe for disposition.

## III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)).  To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This "requires more than labels and

---

[1]      The memorandum was published as Buoniconti v. City of Philadelphia, 148 F. Supp. 3d 425 (E.D. Pa. 2015) ("Buoniconti I").

7

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. DISCUSSION**

In their motion, the City Defendants argue that Plaintiff's second amended complaint again fails to state a claim for relief against the City, Giorla, Goodman, and Osborne with respect to Counts 1, 4, 7, 8, and 9 because (1) Plaintiff has essentially reproduced the allegations in his previous complaint, which the Court dismissed; and (2) Plaintiff's sole new allegation - that the City had a policy or custom of transporting inmates injured at the Facility to another prison facility rather than a hospital emergency room - is overly conclusory and could not have been the moving force behind the alleged violation of Plaintiff's constitutional rights.  City Defs.' Mem. Law ("City Mem.") at 2-3, ECF No. 20.

### A. Count 1: Eighth Amendment Denial of Medical Care Against All Defendants

To state a claim for denial of medical care in violation of the Eighth Amendment, a plaintiff must allege that (1) the conditions he was subjected to were objectively "sufficiently serious," Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)), such that a prison official's act or omission resulted in the "denial of 'the minimal civilized measure of life's necessities,'" id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); and (2) the prison officials involved acted with

9

"'deliberate indifference' to inmate health or safety," id.
(quoting Wilson, 501 U.S. at 303).

A prison official cannot be found to have acted with
"deliberate indifference" unless the official is both "aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists," and "draw[s] the inference." Id.
at 837. While "deliberate indifference" is a subjective
standard, the official's subjective state of mind may be
inferred "from the fact that the risk of harm is obvious." Hope
v. Pelzer, 536 U.S. 730, 738 (2002)).

With respect to medical treatment, specifically, the
Third Circuit has found deliberate indifference where a prison
official "(1) knows of a prisoner's need for medical treatment
but intentionally refuses to provide it; (2) delays necessary
medical treatment based on a non-medical reason; or (3) prevents
a prisoner from receiving needed or recommended medical
treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.
1999). Deliberate indifference also exists "where [a] prison
official persists in a particular course of treatment 'in the
face of resultant pain and risk of permanent injury.'" Id.
(quoting White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)).

Although Plaintiff brings Count 1 against "all
Defendants," a municipality is subject to liability under 42
U.S.C. § 1983 only when "action pursuant to official municipal

10

policy of some nature cause[s] a constitutional tort." Monell
v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). As Plaintiff
brings nearly identical claims against the City in Count 4, the
Court will limit its analysis of Plaintiff's Count 1 to the
individual defendants that are the subject of the City
Defendants' motion: Giorla, Goodman, and Osborne.[2]

        As this Court previously held, Defendants' alleged
significant delay in providing necessary emergency medical
treatment to him is "sufficiently serious" to satisfy the first
requirement for an Eighth Amendment violation. See Buoniconti
I, 148 F. Supp. 3d at 435. The City Defendants argue that
Plaintiff fails to meet the second requirement, "deliberate
indifference," because Plaintiff does not plausibly allege that
Giorla, Goodman, or Osborne were aware of his medical needs, let
alone that they were deliberately indifferent to such needs.
City Mem. at 7.

        This Court previously found that Plaintiff failed to
establish deliberate indifference on the part of Giorla,
Goodman, or Osborne because Plaintiff failed to plead any facts
indicating that any of them had any knowledge or reason to know
of Plaintiff's injuries or their severity before Plaintiff's
roommate reported them. Buoniconti I, 148 F. Supp. 3d at 435-

---

[2]        The City Defendants have not moved to dismiss
Plaintiff's claims against the Corrections Officer Defendants.

11

36.   Instead, Plaintiff merely concluded that "Defendants knew or should have known of Plaintiff's injury between the assault and being found in his room by Plaintiff's roommate."  Am. Compl. ¶ 64.  The Court previously found that this conclusory allegation – which Plaintiff repeats again in his second amended complaint, SAC ¶ 69 – was insufficient to establish deliberate indifference.  Buoniconti I, 148 F. Supp. 3d at 436.  As the Court explained, Plaintiff did not allege any facts explaining how or why Giorla, Goodman, or Osborne knew about his injuries, and Plaintiff's bare allegation that Defendants "knew or should have known" about his injuries, without more, is insufficient to state a claim for deliberate indifference.  Id. (internal quotation marks omitted).

In his second amended complaint, Plaintiff does not plead any new allegations regarding Giorla, Goodman, or Osborne's knowledge of Plaintiff's injuries, either before or after Plaintiff's roommate found him.  Instead, Plaintiff merely adds the allegation that "Defendants John Does 1 & 2, Correction Officers, failure to transport Plaintiff to either [the Hospital of the University of Pennsylvania] or [Penn Presbyterian Medical Center] constitutes deliberate indifference to Plaintiff's medical needs."  SAC ¶ 69.

In his opposition to the City Defendants' motion to dismiss, Plaintiff argues that deliberate indifference is

12

satisfied because the "risk of harm" was "obvious."  Pl.'s Mem.
Law ("Pl.'s Mem."), ECF No. 22, at 11.  It may be plausible that
the "risk of harm" of not transporting Plaintiff directly to a
hospital was "obvious" to the Corrections Officer Defendants
based on their observation of Plaintiff's severely injured
state, and that their failure to do so "prevent[ed] [Plaintiff]
from receiving needed . . . medical treatment," Rouse, 182 F.3d
at 197.  However, the City Defendants are not moving to dismiss
Plaintiff's claims against the Corrections Officer Defendants.
Without any allegation that anyone communicated any information
to Giorla, Goodman, or Osborne regarding Plaintiff's injuries,
Plaintiff's allegations are insufficient to demonstrate actual
or constructive knowledge of the risk of harm on the part of
those Defendants.  Further, Plaintiff does not include a single
allegation that Giorla, Goodman, or Osborne had any involvement
in the decision to transport Plaintiff to another prison
facility instead of a hospital, or any other decision related to
Plaintiff's medical treatment.

        Supervisors may be liable for the constitutional
violations of their subordinates under certain circumstances.
See A.M. ex rel. J.M.K v. Luzerne Cty. Juvenile Det. Ctr., 372

F.3d 572, 586 (3d Cir. 2004).[3]  However, Count 1 brings an Eighth Amendment claim directly against each Defendant.  Plaintiff's inability to plead that Giorla, Goodman, or Osborne were directly involved in the alleged violation of Plaintiff's Eighth Amendment rights is fatal to his claim in Count 1.  See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.").

Accordingly, the Court will dismiss Count 1 of Plaintiff's second amended complaint as to Giorla, Goodman, and Osborne.

B.   Counts 4 and 7: Eighth Amendment Denial of Medical Care and Monell Claim Against Defendant City of Philadelphia

As in his previous complaint, Plaintiff's fourth and seventh counts bring claims against the City.  In Count 4, Plaintiff alleges that the City failed to provide medical care to Plaintiff, constituting deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.  See SAC ¶¶ 88-92.  In Count 7, Plaintiff brings a Monell claim against the City based on various City policies and

---

[3]      Indeed, such supervisory liability is the basis of Plaintiff's claims against Giorla and Goodman in Count 8 of his second amended complaint.

customs that Plaintiff alleges resulted in his injuries.  Id.
¶¶ 97-108.

"[A] municipality cannot be held liable solely because
it employs a tortfeasor - or, in other words, a municipality
cannot be held liable under § 1983 on a respondeat superior
theory."  Monell, 436 U.S. at 691.  Instead, municipalities are
liable under § 1983 only when "action pursuant to official
municipal policy of some nature cause[s] a constitutional tort."
Id.  Liability arises where "the action that is alleged to be
unconstitutional implements or executes a policy statement,
ordinance, regulation, or decision officially adopted and
promulgated by that body's officers."  Id. at 690.  In the
absence of an official policy, a municipality may also face
liability under § 1983 "for constitutional deprivations visited
pursuant to governmental 'custom' even though such a custom has
not received formal approval through the body's official
decisionmaking channels."  Id. at 690-91.  A "custom" arises
from practices by state officials that amount to entrenched
behavior in the municipal employees.  See id. at 691.

Therefore, to state a claim against a municipality
under § 1983, a plaintiff must establish that (1) the
municipality had a policy or custom that deprived the plaintiff
of his constitutional rights, (2) the municipality acted
deliberately and was the moving force behind the deprivation,

and (3) the plaintiff's injuries were caused by the identified
policy or custom.  See id. at 692-94.

    The City Defendants argue that Plaintiff fails to
state a claim with respect to Counts 4 and 7 of his second
amended complaint because he (1) does not plead any actual facts
with respect to a policy or custom and (2) does not identify a
municipal policymaker.  See City Mem. at 6-10.

### 1.  Municipal Policymaker

    To bring a Monell claim, "a plaintiff must show that
an official who has the power to make policy is responsible for
either the affirmative proclamation of a policy or acquiescence
in a well-settled custom."  Bielevciz v. Dubinon, 915 F.2d 845,
850 (3d Cir. 1990) (citing Andrews v. City of Phila., 895 F.2d
1469, 1480 (3d Cir. 1990)).  To determine whether an official is
a policymaker, a court must ask "whether, as a matter of state
law, the official is responsible for making policy in the
particular area of municipal business in question."  Hill v.
Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (emphasis
omitted).  The court must then ask whether the official's
authority to make the policy is "final and unreviewable."  Id.
(emphasis omitted).

    In his second amended complaint, Plaintiff alleges, as
he did in his previous complaint, that Giorla, as commissioner

16

of the Philadelphia Prison System, and Goodman, as a warden at
the Facility, "were employed and authorized by Defendant City of
Philadelphia to exercise his or her discretion to make
decisions, take action or inaction, adopt policies, permit
practices or utilize procedures within each respective role,
without oversight or with meaningful review."  SAC ¶ 19; Am.
Compl. ¶ 19.  The Court previously determined that this
conclusory allegation was insufficient to plead that Giorla and
Goodman had final, unreviewable authority to make policy in the
particular areas of municipal business in question: the medical
treatment and security of inmates at the Facility.  Buoniconti
I, 148 F. Supp. 3d at 437-38.  As Plaintiff has not added any
new allegations regarding Giorla's and Goodman's alleged roles
as municipal policymakers, and Plaintiff has not alleged that
any other individual acted as a policymaker, Plaintiff has again
failed to identify a municipal policymaker for the purposes of
his claims against the City.

    2.   Policy or Custom

Plaintiff alleges that the City had a number of
policies and customs that deprived Plaintiff of his
constitutional rights, which fall into three general categories:
(1) not providing adequate emergency medical treatment,
including not transporting seriously injured inmates to nearby

17

medical facilities; (2) not providing adequate security, including not monitoring the hallways and cell rooms at the Facility or the criminal status of inmates; and (3) failing to adequately train and supervise employees regarding emergency medical care and security.  SAC ¶¶ 31-34, 46-49, 100-07.

While Plaintiff alleges in a conclusory fashion that the City had each of these "polic[ies] and/or custom[s]," he does not explain what the policies or customs were or provide any factual basis for his allegations that the policies or customs existed.  "[V]ague assertions" of a policy or custom, without more, are not sufficient to state a claim under Monell. Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). All of the new allegations Plaintiff has added in his second amended complaint merely repeat the same types of conclusory statements that this Court previously found insufficient.  Thus, as explained in greater detail below, Plaintiff again fails to meet the standards articulated in Monell for alleging a City policy or custom that caused his injuries.

a.   Adequate Medical Care

Plaintiff alleges in his second amended complaint that the City had "customs and policies" of not providing adequate medical care, including a custom and policy "not to provide emergency medical treatment and/or have adequate facilities to

provide emergency medical services to inmates that suffered
serious and grave injuries while imprisoned." SAC ¶ 31.
Plaintiff further alleges that the City's "custom at [the
Facility] to not provide inmates suffering from grave and
serious medical injuries with emergency medical care was the
direct and proximate cause of Plaintiff sustaining serious and
permanent injuries." Id. ¶ 33.

        The only facts Plaintiff alleges supporting the
existence of the City's alleged policies and customs regarding
the denial of medical care relate to Plaintiff's own medical
care following the incident at issue in this action. The Third
Circuit has made clear that "a single incident of
unconstitutional activity is not sufficient to impose liability
under Monell, unless proof of the incident includes proof that
it was caused by an existing, unconstitutional municipal policy,
which policy can be attributed to a municipal policymaker."
Groman, 47 F.3d at 637. In his second amended complaint,
Plaintiff does not identify any specific City policy regarding
the denial of medical care to inmates, let alone an
unconstitutional one.

        While a Monell claim against a municipality may rest
on the absence of a necessary policy, see Natale v. Camden
County Correctional Facility, 318 F.3d 575, 584-85 (3d Cir.
2003) (reversing denial of summary judgment on Monell claim

because absence of policy ensuring inmates received needed medication for serious medical conditions was a "glaring omission" that constituted deliberate indifference), that is not what Plaintiff pleads here.  As Plaintiff has failed to adequately plead that the City had an affirmative policy or custom of not providing adequate medical care to inmates, and Plaintiff does not allege that the absence of a policy or custom regarding medical care caused his injuries, Plaintiff's Monell claim against the City based on the denial of medical care fails.

Plaintiff has also added the new allegation that the City had a "custom and policy of not transporting seriously and gravely injured inmates housed at the [Facility] to either [the Hospital of the University of Pennsylvania] or [Penn Presbyterian Medical Center]."  Id. ¶ 91.  This overly conclusive allegation fails to state a Monell claim for the same reasons as discussed above.  Plaintiff has not pleaded any facts regarding this alleged "custom and policy" aside from the single incident at issue here, nor has Plaintiff pleaded that it was the absence of an affirmative policy or custom that resulted in the Defendant Corrections Officers' failure to transport him to a hospital.

In addition, paradoxically, Plaintiff alleges that the sergeants on duty at the Facility "ordered two Corrections

Officers to transport Plaintiff to an emergency room at a local hospital." Id. ¶ 28. This undermines Plaintiff's allegation that the City had a custom and policy of not transporting injured inmates to hospitals, and suggests instead that Plaintiff is alleging that his injuries were caused by the Defendant Corrections Officers' refusal to obey the orders of other officers on duty, as opposed to adhering to a City custom or policy.

b.   Adequate Security

Plaintiff alleges that the City had policies and customs that failed to protect him from the attack, including (1) not monitoring the criminal status of inmates at the Facility, and (2) not monitoring the hallways and cell rooms of the Facility. SAC ¶¶ 47-52. The City Defendants argue that these conclusive allegations are insufficient to establish a policy or custom for purposes of a Monell claim. City Mem. at 7-8.

Prison officials "must take reasonable measures to guarantee the safety of the inmates," and therefore "have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (alteration in original) (quoting Cortes-Quinones v. Jiminez-Nettleship, 842 F.2d 556, 58 (1st Cir.)). "It is not, however, every injury

21

suffered by one prisoner at the hands of another that translates
into constitutional liability for prison officials responsible
for the victim's safety." Id. at 834.  As with a claim for
denial of medical care, a prisoner seeking to establish a
"failure to protect" claim against a prison official must
demonstrate that (1) the prisoner was "incarcerated under
conditions posing a substantial risk of serious harm," and (2)
the prison official acted with "'deliberate indifference' to
inmate health or safety." Id. at 834 (quoting Wilson, 501 U.S.
at 297).

Here, Plaintiff alleges that the City had certain
policies or customs that failed to protect him from an attack
from other inmates.  As with his other Monell claims, Plaintiff
must first "identify a custom or policy" of the City and
"specify what exactly that custom or policy was," McTernan v.
City of York, 564 F.3d 636, 658 (3d Cir. 2009), and then plead
facts demonstrating a "direct causal link between [the City's]
policy or custom and the alleged constitutional deprivation,"
Jiminez v. All American Rathskeller, Inc., 503 F. 3d 247, 249
(3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378,
385 (1989)).

As with his allegations regarding the denial of
medical care, Plaintiff has not identified any facts supporting
his assertions about the City's policies or customs aside from

22

facts that relate to the single incident at issue in this
action.  Without more, allegations regarding a single incident
are insufficient to state a claim that a municipality had a
specific custom or policy.  See Groman, 47 F.3d at 637; Brown v.
Crawford Cty., No. 12-80, 2013 WL 411472, at *4 (W.D. Pa. Feb.
1, 2013) (dismissing claims against municipality on a failure-
to-protect claim because plaintiff failed to set forth any
allegations of other incidents that occurred in the past to
prove some pattern of conduct establishing a custom or policy
that proximately caused the plaintiff's injuries).  Nor does
Plaintiff plead that it was the City's absence of policies
providing for the protection of inmates that caused his
injuries.  Cf. Natale, 318 F.3d at 584.  Plaintiff's allegations
regarding the City's policies and customs of failing to provide
adequate security at the Facility are therefore insufficient to
state a Monell claim.

> c.   Failure to Train

Plaintiff also alleges that the City "failed to
properly train, supervise and discipline the corrections
officers at [the Facility]," SAC ¶ 57, and that it was the
"policy and/or custom" of the City to (1) "inadequately
supervise and train" its employees "regarding the need for
emergency treatment, the proper method to administer emergency

aid to seriously injur[ed] inmates and [the] most reasonable
manner to provide such aid," id. ¶ 107; and (2) "inadequately
supervise and train its Corrections Officers and Supervisors
against a code of silence or complicity of violence within the
prison system," id. ¶ 102.

The City Defendants argue that Plaintiff's failure to
train claim fails for the same reasons that the Court previously
dismissed it: Plaintiff "does not plead facts that 'indicate the
existence or nonexistence of a training program or policy,'
'allege a history of employees mishandling situations of inmate-
on-inmate violence,' or 'indicate the wrong choice by an
employee in implementing a policy that could frequently cause
the deprivation of constitutional rights.'"  City Mem. at 8 n.5
(quoting Buoniconti I, 148 F. Supp. 3d at 442).

In order for a plaintiff to satisfy a § 1983 claim
against a municipality based on the municipality's failure to
train its employees, the "municipality's failure to train its
employees in a relevant respect must amount to 'deliberate
indifference to the rights of persons with whom the [untrained
employees] come into contact.'"  Connick v. Thompson, 563 U.S.
51, 61 (2011) (quoting Canton, 489 U.S. at 388).  "Only then
'can such a shortcoming be properly thought of as a city 'policy
or custom' that is actionable under § 1983.'"  Id. (quoting
Canton, 489 U.S. at 395).

24

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)).  By demonstrating a pattern, a plaintiff shows that policymakers exhibited a "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees," which in turn "may establish the conscious disregard for the consequences of their action--the 'deliberate indifference'--necessary to trigger municipal liability." Id. (quoting Bryan Cty., 520 U.S. at 407). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

In absence of a pattern, deliberate indifference for purposes of a failure-to-train claim may be established by a single incident in the "rare" circumstance "that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 64.

As in his amended complaint, Plaintiff's allegations relating to the City's alleged "failure to train" - whether

25

regarding medical care or regarding security - are conclusory
and do not establish "deliberate indifference."  Plaintiff does
not make any allegations regarding any incidents aside from his
own, and therefore he does not allege a pattern of failing to
provide medical care or security that could have alerted the
City to a possible failure to properly train its employees.
Instead, Plaintiff merely alleges, in a conclusory fashion, that
it was "the policy and/or custom" of the City to "fail to
sufficiently supervise" or "inadequately supervise and train"
its employees in these areas.

        While a plaintiff may establish deliberate
indifference based on the "failure to train" through a single
incident, the incident that Plaintiff alleges does not meet this
standard.  For a single incident to establish deliberate
indifference, a plaintiff must allege that "(1) municipal
policymakers know that employees will confront a particular
situation; (2) the situation involves a difficult choice or a
history of employees mishandling; and (3) the wrong choice by an
employee will frequently cause deprivation of constitutional
rights."  Carter v. City of Phila., 181 F.3d 339, 356 (3d Cir.
1999).  Plaintiff does not allege any of these elements
regarding either the denial of medical care to inmates or the
failure to protect inmates from violence.  Plaintiff also does
not provide any allegations from which the Court could draw the

26

reasonable inference that these requirements of "single incident" failure-to-train liability are met.

As Plaintiff has not identified a municipal policymaker and has failed to adequately plead any City custom or policy that deprived Plaintiff of his constitutional rights, the Court will dismiss Counts 4 and 7 of Plaintiff's second amended complaint.

C.   Count 8: Supervisory Liability Claim Against
     Defendants Giorla and Goodman

In Count 8, Plaintiff brings a "supervisory liability" claim against Giorla and Goodman.  "[U]nlike other legal contexts, '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'"  Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 676).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

However, if a government official or employee has supervisory authority over a subordinate, the supervisor may be liable for unconstitutional actions of the subordinate in two ways: (1) if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice

or custom which directly caused [the] constitutional harm," or (2) "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct.  A.M. ex rel. J.M.K, 372 F.3d at 586 (alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).[4]

The City Defendants argue that Plaintiff's allegations are insufficient to state a claim for supervisory liability against Giorla and Goodman because Plaintiff has again failed to allege any facts indicating that Giorla and Goodman (1) "established and maintained a policy or custom that directly caused a constitutional harm," or (2) "participated in a violation of Plaintiff's rights, directed others to violate them, or acquiesced to a violation."  City Mem. at 11 (quoting Buoniconti I, 148 F. Supp. 3d at 444).

---

[4]     The Third Circuit has acknowledged that Iqbal may have further limited the liability of supervisors for the unconstitutional conduct of their subordinates, but has thus far declined to specifically decide whether to narrow the scope of the test.  See, e.g., Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether Iqbal eliminated - or at least narrowed the scope of - supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us.").  This Court need not consider whether the scope of supervisory liability has narrowed after Iqbal because, for the reasons discussed below, Plaintiff has failed to state a claim for supervisory liability even under the broader pre-Iqbal Third Circuit precedent.

In his second amended complaint, Plaintiff alleges
that Giorla and Goodman had customs and policies of (1) not
monitoring the criminal status of inmates housed at the
Facility, which created a risk of violence; and (2) failing to
guard and monitor the hallways and cell room of the Facility.
SAC ¶¶ 112-18.  As a result of these customs and policies,
Plaintiff claims, "dangerous and violent criminals" such as
Reeves and Burnett "had access to Plaintiff's cell room."  Id.
¶ 118.  As with Plaintiff's allegations regarding the City's
policies and customs, Plaintiff has provided no facts supporting
his conclusory allegations that Giorla and Goodman had these
policies and customs, let alone that they were established and
maintained with deliberate indifference.  Plaintiff's
allegations regarding Giorla and Goodman's policies and customs
are therefore insufficient to state a claim.  See Groman, 47
F.3d at 637.

Plaintiff also alleges that Giorla and Goodman
"acquiesced" in Osborne's conduct, including Osborne's custom
and policy of providing favorable treatment to African-American
inmates.  SAC ¶¶ 110-124.  Plaintiff does not allege, as
required, that Giorla or Goodman had actual or supervisory
authority over Osborne.  See Robinson v. City of Pittsburgh, 120
F.3d 1286, 1294 (3d Cir. 1997) ("[E]xcept perhaps in unusual
circumstances, a government official or employee who lacks

29

supervisory authority over a person who commits a constitutional tort cannot be held, based on mere inaction, to have 'acquiesced' in the unconstitutional conduct."), <u>overruled on other grounds by</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006). Nor does Plaintiff allege that Giorla or Goodman knew about Osborne's conduct. <u>See</u> <u>A.M. ex rel. J.M.K</u>, 372 F.3d at 586) (supervisory liability based on acquiescence requires a plaintiff to plead that the supervisor "<u>had knowledge of</u> and acquiesced" in the subordinate's unconstitutional conduct (emphasis added)). And Plaintiff's bare legal conclusion that Giorla and Goodman "acquiesced" in Osborne's conduct is not sufficient to state a claim. <u>See</u> <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 679 (3d Cir. 2012) ("[W]e disregard rote recitals of elements of a cause of action, legal conclusions, and mere conclusory statements.").

Plaintiff's allegations regarding supervisory liability fall far short of the standards articulated <u>Twombly</u> and <u>Iqbal</u>. Therefore, the Court will dismiss Count 8 of Plaintiff's second amended complaint.

### D. Count 9: Eighth Amendment Claim Against Defendant Osborne

Finally, the City Defendants move to dismiss Count 9, which contains an Eighth Amendment claim against Osborne. In Count 9, Plaintiff alleges that Osborne had the custom and

policy of not monitoring the hallways and cell rooms of the
Facility, which allowed Reeves and Burnett to access Plaintiff's
room.  SAC ¶ 127.  Plaintiff also alleges that Osborne had the
custom and policy of providing favorable treatment to African-
American inmates at the Facility, including not disciplining
African-American inmates who committed obvious offenses, which
"created an atmosphere that condoned violent and inappropriate
behavior" and allowed Reeves and Burnett to have access to
Plaintiff's room and attack him.  Id. ¶¶ 128-30.  Plaintiff
alleges that these customs and policies violated Plaintiff's
Eighth Amendment rights "by subjecting [him] to cruel and
unusual punishment."  Id. ¶ 131.

        To establish that Osborne failed to protect Plaintiff
from injury in violation of the Eighth Amendment, Plaintiff
"must plead facts that show (1) he was incarcerated under
conditions posing a substantial risk of serious harm,
(2) [Osborne] was deliberately indifferent to that substantial
risk to his health and safety, and (3) [Osborne's] deliberate
indifference caused him harm."  Bistrian, 696 F.3d at 367
(citing Farmer, 511 U.S. at 834).

        The City Defendants argue that Plaintiff's claim
against Osborne must be dismissed because Plaintiff has again
failed to plead any factual allegations from which the Court
could infer that Osborne "failed to protect Plaintiff in light

31

of a known or obvious consequence of his actions or inactions."
City Mem. at 9 (quoting Buoniconti I, 148 F. Supp. 3d at 446).
The Court agrees.  Plaintiff has not included any facts
suggesting that Osborne was aware of a substantial risk of
serious harm, let alone that Osborne was deliberately
indifferent to that risk.  Indeed, the only allegations that
Plaintiff includes regarding Osborne's conduct are the
conclusory statements that Osborne had certain customs and
policies that caused Plaintiff's injuries.  Plaintiff's
allegations are therefore insufficient to state a claim against
Osborne, and the Court will dismiss Count 9 of Plaintiff's
second amended complaint.[5]

## V.   LEAVE TO AMEND

A district court should freely grant a plaintiff leave
to amend a complaint when justice so requires "unless [it] would

---

[5]      Plaintiff's previous complaint also alleged that
Osborne violated Plaintiff's Eighth Amendment rights by failing
to report or investigate the attack against Plaintiff.  See
Buoniconti I, 148 F. Supp. 3d at 446-47.  Although Plaintiff has
removed those allegations from Count 9, he alleges earlier in
his second amended complaint that Osborne had a policy and
custom of "not reporting crime and violent actions to
appropriate authorities," through which "Plaintiff has been
denied the ability and opportunity to pursue justice."  SAC
¶¶ 59-60.  To the extent that Plaintiff continues to assert an
Eighth Amendment claim against Osborne based on Osborne's
failure to report or investigate the attack, this claim should
be dismissed because, as the Court previously explained,
Plaintiff's allegations are insufficient to overcome the defense
of qualified immunity.  See Buoniconti I, 148 F. Supp. 3d at
446-47.

be inequitable or futile." Grayson v. Mayview State Hosp., 293
F.3d 103, 108 (3d Cir. 2002). Plaintiff has amended his
complaint once as of right. Plaintiff has also amended his
complaint a second time in an attempt to cure the deficiencies
identified in this Court's memorandum and order granting the
City Defendants' previous motion to dismiss. Although the
Court's previous memorandum and order detailed the manner in
which Plaintiff's allegations did not state a claim, Plaintiff
has not added sufficient allegations providing factual support
for his claims. As Plaintiff has already unsuccessfully amended
his complaint with respect to the claims at issue in this
motion, the Court believes further amendment would be futile.

Accordingly, the Court will dismiss Counts 1, 4, 7, 8,
and 9 against the City, Giorla, Goodman, and Osborne with
prejudice, and deny Plaintiff leave to amend his second amended
complaint with respect to those claims.

## VI.  CONCLUSION

For the reasons stated above, the Court will grant the
City Defendants' motion to dismiss and dismiss Counts 1, 4, 7,
8, and 9 of Plaintiff's second amended complaint against the
City, Giorla, Goodman, and Osborne with prejudice.

An appropriate order follows.

33